IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| J.Q.T., a minor, by and through his parent natural guardian Juan Jovan Quinones,<br>　　　　Plaintiff,<br><br>　　　v.<br><br>STEPHANIE AMATO, and<br>THE SCHOOL DISTRICT OF<br>PHILADELPHIA,<br>　　　　Defendants. | CIVIL ACTION<br><br><br><br>NO. 17-3316 |

DuBois, J.　　　　　　　　　　　　　　　　　　　　　　　　　　September 21, 2018

## M E M O R A N D U M

### I.　　INTRODUCTION

This case arises out of the sexual assault of J.Q.T., a minor, by an instructor at Dr. Ethel Allen Promise Academy, where he was a fourteen year-old special education student. Juan Jovan Quinones, grandparent and natural guardian of J.Q.T.,[1] claims that the School District of Philadelphia violated 42 U.S.C. § 1983.[2] Presently before the Court is the School District of Philadelphia's Motion to Dismiss plaintiff's Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, defendant's Motion to Dismiss is denied.

### II.　　BACKGROUND

The facts alleged in plaintiff's Third Amended Complaint are as follows. In February of 2014, J.Q.T. was an eighth grade special education student at Dr. Ethel Allen Promise Academy

---

[1] Juan Jovan Quinones is identified in the caption as parent and natural guardian. The record discloses that he is actually J.Q.T.'s grandfather.
[2] Plaintiff also asserts several claims against Stephanie Amato, the employee who sexually assaulted J.Q.T., including claims of assault and battery, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, and punitive damages. Third Am. Compl. Counts I–V.

1

("the Academy"), operated by the School District of Philadelphia ("the District"). Third Am. Compl. ¶¶ 5, 6. Defendant Stephanie Amato ("Amato") was a teacher at the Academy and an employee of the District. *Id.* ¶¶ 7, 27. J.Q.T. was placed in Amato's class where he was under Amato's supervision. *Id.* ¶¶ 7. In February of 2014, Amato began to sexually assault J.Q.T. on an ongoing basis. *Id.* ¶ 8. Amato performed sexual acts on J.Q.T. and instructed him to engage in sexual activity with her, which he did, at her home, in her vehicle, and on school property. *Id.* ¶¶ 24–26. On one occasion, Amato invited J.Q.T. into her home, provided him with alcohol, and proceeded to sexually assault him. *Id.* ¶ 26.

Plaintiff cites two incidents in the Third Amended Complaint to support his allegations that teachers and staff at the Academy were aware of Amato's inappropriate behavior towards J.Q.T. and failed to intervene. *Id.* ¶ 23. He claims that none of the teachers or staff members who witnessed these two incidents took any action "because there is no school policy which required them to do so." *Id.* ¶ 10. Plaintiff further asserts that the District's failure to "formulate, adopt, or enforce policies, training or procedures to prevent sexual assault" resulted in a violation of J.Q.T.'s constitutional rights. *Id.* ¶ 23.

The first incident occurred on February 25, 2014. Two gym teachers, Al Piciarello ("Piciarello") and Greg Goettner ("Goettner"), witnessed Amato and J.Q.T. sitting in a car alone together in the employee parking lot during school hours. *Id.* ¶¶ 9–11. That same day, Piciarello and Goettner informed a teacher, Ben Wolfgang ("Wolfgang") about what they had seen. *Id.* ¶ 11. Wolfgang then referred the matter to School Police Officer Robinson ("SPO Robinson") who watched a tape showing Amato and J.Q.T. in the car alone together for five minutes. *Id.* ¶¶ 12, 13. After observing the tape, SPO Robinson took no further action. *Id.* ¶ 14. Wolfgang "gave a

signed statement" regarding the incident, on February 26, 2014, and then took no further action.[3] The second incident occurred on March 26, 2014. *Id.* ¶ 22. On that date, Wolfgang was called to a room where J.Q.T. complained that he would not give Amato his phone because "she's [] a stalker." *Id.* ¶ 22.

On April 4, 2014, J.Q.T. reported to a school support staff member, Makit Abdul-Wali, that he and Amato had been having sexual intercourse. *Id.* ¶ 15. At that point the Philadelphia Police Department was notified, and the District conducted an investigation. *Id.* ¶ 16. Ultimately, on November 17, 2016, Amato pled guilty to numerous criminal charges arising from her sexual assault of J.Q.T. *Id.* ¶ 31.

This case was filed in the Court of Common Pleas of Philadelphia County on May 2, 2017, asserting state tort claims against defendants Amato, the Academy, the District, and the City of Philadelphia. Plaintiff filed an Amended Complaint on June 19, 2017, and a Second Amended Complaint on July 24, 2017. The Second Amended Complaint alleges state law claims under several negligence theories, and, for the first time, a § 1983 claim against the District. On July 25, 2017, defendants removed the case to federal court based on federal question jurisdiction.

On July 10, 2018, plaintiff filed a Third Amended Complaint against defendants Amato and the District. Plaintiff's sole claim against the District in the Third Amended Complaint is that the District violated § 1983 (Count VI). The District filed a Motion to Dismiss the Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) on July 26, 2018. Plaintiff filed his Response on August 23, 2018, and on August 30, 2018, the District filed a Reply. The Motion to Dismiss is ripe for review.

---

[3] The Third Amended Complaint does not include any allegations regarding who Wolfgang's February 26, 2014 statement was given to or who may have read the statement.

## III. APPLICABLE LAW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to respond to a pleading by filing a motion to dismiss for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, the complaint must allege facts that "'raise a right to relief above the speculative level.'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertion[s]." *Twombly*, 550 U.S. at 557, 564. Such allegations are "not entitled to the assumption of truth" and must be disregarded. *Iqbal*, 556 U.S. at 679. The court then assesses the remaining "'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether the complaint states a plausible claim for relief. *Id.* at 680. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## IV. DISCUSSION

To plead a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant, acting under color of state law, deprived him of a right secured by the United States Constitution or federal law. 42 U.S.C. § 1983; *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). In this case, the District is a municipal entity subject to liability under § 1983. *See*

*Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 690 (1978). "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Rather, to state a claim against a municipal entity under § 1983, a complaint must allege a constitutional violation by a municipal actor that was caused by a municipal policy or custom. *Id.* at 694; *see also Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013); *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 240 (3d Cir. 2016).

The Third Circuit has held that there are three situations where the actions of an employee can be considered the result of a "policy or custom" "rendering [a governmental] entity liable under § 1983." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). A policy or custom may exist (i) where an officer or entity promulgates a policy and the complained of act is simply an implementation of that policy; (ii) where no specific rule has been announced but "federal law has been violated by an act of the policymaker itself;" or (iii) where "the policymaker has failed to act" and "the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Id.* (internal quotations and citations omitted).

In its Motion to Dismiss the District argues that plaintiff has not identified a "policy custom, or practice of the District" which resulted in a violation of J.Q.T.'s constitutional rights. Def. Mot. to Dismiss 4. Plaintiff acknowledges that he has not identified "any official policy that permits District students to be sexually abused by teachers." Pl.'s Resp. to District's Mot. to Dismiss 2. Instead, plaintiff argues that his Third Amended Complaint pleads facts demonstrating the District's "failure to properly train its employees to report and respond" to a

pattern of violations which led to sexual abuse. Pl. Resp. 2. The Court analyzes plaintiff's failure to train claim below.

### a. Municipal Liability for Failing to Train or Supervise

A failure to train, supervise, or discipline employees can trigger municipal liability under § 1983 where "the failure amounts to a deliberate indifference to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (internal quotations and citation omitted); *Natale*, 318 F.3d at 584. "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted).

In order to succeed on a "failure to train" claim, plaintiff must show (i) that the failure to train had a causal nexus to the constitutional violation and (ii) that the policymakers exhibited deliberate indifference in their failure to train employees. *Thomas v. Cumberland Cty.*, 749 F.3d 217, 226 (3d Cir. 2014).

#### i. Causal Nexus

First, to establish a § 1983 claim on a failure to train theory, the failure to train must have "a causal nexus with [the plaintiff's] injury." *Thomas,* 749 F.3d at 226 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)). "Liability cannot rest only on a showing that the employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury." *See Thomas*, 749 F.3d at 226. Instead, "the causation inquiry focuses on whether "the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect." *Id.*

6

(quoting *Canton*, 489 U.S. at 391); s*ee also Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, 2018 WL 3738622, at *3 (3d Cir. Aug. 6, 2018) (holding that a district court did not abuse its discretion in denying a motion for leave to file an amended complaint where a principal was put on notice of sexual assault *after* the period of sexual assaults had ended and the school district's failings "did not actually cause the abuse").

In this case, plaintiff claims that teachers and an SPO observed a suspicious encounter between Amato and J.Q.T. in the middle of a period of ongoing sexual assaults.[4] Third Am. Compl. ¶¶ 8–10, 28. Additionally, plaintiff claims that J.Q.T. told a teacher, who was already aware of Amato's suspicious conduct, that Amato was a "stalker." Third Am. Compl. ¶ 22. Had the teachers and the SPO been trained to intervene, investigate, or report Amato's questionable conduct to the Academy principal or the Philadelphia Police Department, they might have prevented Amato from continuing to sexually assault J.Q.T. after February 25, 2014.

Furthermore, plaintiff asserts that the District has no policies or training on recognizing and reporting inappropriate conduct between teachers and students. Plaintiff states that three teachers and one SPO failed to take action in response to a colleague's inappropriate conduct with a fourteen year-old special education student because "there [was] *no* school policy which required them to do so" and the District "failed to formulate, adopt or enforce policies, training or procedures to prevent sexual assault." Third Am. Compl. ¶¶ 10, 23.

The Court concludes that these allegations sufficiently plead a causal nexus between the failure to train District employees and Amato's continued sexual assaults in violation of J.Q.T.'s constitutional rights.

---

[4] The Third Amended Complaint states that the alleged assaults began in February of 2014 and "continu[ed] for some time thereafter," but does not reference specific dates. Third Am. Compl. ¶ 8. However, plaintiff states that the District allowed Amato to perpetrate assaults even though it had "prior knowledge" of Amato's behavior, based on the events of February 25, 2014. *Id.* ¶ 28. Viewing all facts in the light most favorable to plaintiff, he has adequately alleged that the assaults continued after February 25, 2014.

## ii. Deliberate Indifference

Next, the Court must evaluate whether the Third Amended Complaint alleges sufficient facts to raise an inference of deliberate indifference. To raise an inference of deliberate indifference a plaintiff must plead (and prove at trial) (i) that policymakers know that employees will confront a particular situation, (ii) that the situation involves a "difficult choice or a history of employees mishandling," and (iii) that the wrong choice will likely cause a deprivation of constitutional rights. *Doe v. Luzerne Cty.*, 660 F.3d 169, 179–80 (3d Cir. 2011) (citing *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999); *Walker v. N.Y.C.*, 974 F.2d 293, 297–98 (2d Cir. 1992)). Typically, a pattern of similar constitutional violations is necessary to show deliberate indifference, but in some cases, courts have found a single incident sufficient to support deliberate indifference where the likelihood of constitutional violations as a result of a lack of a policy or training is "obvious." *Logan*, 2018 WL 3738622, at *3 (internal quotations omitted); *Simonds v. Delaware Cty.*, No. 13-7565, 2015 WL 1954364, at *5 (E.D. Pa. Apr. 30, 2015).

### a) *Pattern of Violations*

Policymakers must be on notice that "a particular omission in their training program" is likely to lead to the violation of constitutional rights. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). For a "pattern of violations" to provide notice of an inadequacy in a training program, the pattern must be known to the policymakers running the program. *See Kline ex rel. Arndt v. Mansfield*, 255 F. App'x 624, 630 (3d Cir. 2007) (holding that plaintiff's "reliance on instances of possible sexual abuse that were unknown to [defendant]," to support a finding of deliberate indifference, "is [] misplaced. . . . Because this evidence was unknown, the failure to train school officials could not be perceived as a conscious or deliberate choice. . .").

8

In the present case, the District argues that the plaintiff has failed to allege a pattern of constitutional violations that would put the District on notice of any problematic omission in its training program. Def. Mot. to Dismiss 5–6. In response, plaintiff asserts that he pled a "two month pattern of violations by Defendant Amato, which were known to school officials." Pl. Resp. 2. In referencing Amato's "pattern of violations," plaintiff refers only to Amato's conduct with J.Q.T. Plaintiff has not alleged that Amato had been caught engaging in similar misconduct with other students or that the District had an ongoing problem with teachers sexually assaulting students.

Furthermore, although Plaintiff conclusively asserts that the pattern of violations was known to "school officials," plaintiff's Third Amended Complaint only avers that teachers had witnessed suspicious conduct and failed to report or investigate that conduct. Third Am. Compl. ¶¶ 12, 13, 14, 22. The facts, as pled, do not establish that policymakers were aware of Amato's "pattern of violations" against J.Q.T. In essence, plaintiff's argument misinterprets the law.

The alleged pattern of violations in this case is limited to Amato's ongoing sexual assaults of J.Q.T., unknown to school policymakers. These allegations are insufficient to raise an inference of deliberate indifference.

### b) Single Incident

Without establishing a pattern of violations, "a 'failure to train' or 'lack of policy' claim may be established on the basis of a single constitutional violation." *Hunter v. City of Phila.*, No. 15-2737, 2015 WL 7734158, at *4 (E.D. Pa. Dec. 1, 2015). To establish a failure to train claim on the basis of a single incident, the need for training to avoid constitutional violations must be "obvious." *Id.* at *4; s*ee Berg v. County of Allegheny,* 219 F.3d 261, 276–277 (3d Cir. 2000) (holding that a single incident involving a warrant issuing system, where a "slip of a finger

9

could result in wrongful arrest and imprisonment," created "an issue of fact whether the [c]ounty was deliberately indifferent to an obvious risk"); *see also City of Canton*, 489 U.S. at 390 n.10 (providing a hypothetical example of single incident liability where a city knew that its police officers would be required to apprehend fleeing felons and armed its officers with firearms without first training them on the constitutional limitations on the use of deadly force).

Courts have further held that where "an employee's actions are patently inappropriate such that the proper course of action was apparent without training, policymakers cannot be found to be deliberately indifferent because the need for training was not obvious." *Hunter*, 2015 WL 7734158, at *4. Based on this line of reasoning, the Third Circuit affirmed a district court's grant of a motion for summary judgment in *Kline ex rel. Arndt v. Mansfield*, 255 Fed. App'x 624, 630 (3d Cir. 2007). In *Kline,* the court stated that because the plaintiff had been given an "opportunity to show a pattern" of abuse and "because not committing the crime of sexually abusing a child is obvious, the failure of [defendant] to train its employees to spot signs of sexual abuse . . . was not deliberately indifferent." *Id.*

*Kline* is distinguishable from the present case for several reasons. First of all, in this case plaintiff has not yet had discovery covering the claimed "pattern of abuse" or the alleged notice to the District of the need for training and a reporting policy to prevent sexual assault. Furthermore, here, in contrast to *Kline,* plaintiff alleges that the District not only failed to train employees as to how to detect the signs of sexual abuse, but also, had no policy whatsoever requiring teachers to report the suspicious behavior of fellow colleagues. Finally, *Kline* was analyzed at the summary judgment stage while, in this case, the plaintiff's claims must be evaluated under the less stringent motion to dismiss standard. In evaluating the merits of a motion to dismiss, "[t]he Court must accept as true all well-pleaded allegations in the complaint

and view them in the light most favorable to the plaintiff." *Hunter*, 2015 WL 7734158, at *2. Given these distinctions, and notwithstanding the holding in *Kline*, the Court cannot conclude based on the present record that there is no set of facts on which the plaintiff could prevail in a § 1983 claim against the District.

As discussed above, the Third Circuit has held that an inference of deliberate indifference is created where "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Doe v. Luzerne Cty.*, 660 F.3d 169, 179–80 (3d Cir. 2011). Although this three part test is frequently met by showing a pattern of constitutional violations, in this case, the plaintiff's claims are sufficient to meet the Third Circuit standard for deliberate indifference based on a single-incident theory because there was an "obvious risk" of constitutional violations. *Berg,* 219 F.3d at 276–277.

First of all, given the incidence of sexual assault against minors it should be obvious to the policymakers of a school district that they will need to prepare for situations where an adult engages in inappropriate sexual behavior with a minor. Such allegations are common and school districts cannot blind themselves to the risk of abuse when minors are released to the custody and control of adult instructors.

Next, although the plaintiff has not alleged a pattern of constitutional violations, the decision of when to report suspected abuse undoubtedly involves a difficult choice. In this case, four employees of the District incorrectly chose not to report concerns of abuse based on suspicious behavior. Third Am. Compl. ¶ 10. The signs of abuse and when to report suspicious behavior, particularly when the school lacks a reporting policy, are by no means clear. These

11

situations can be particularly complicated when the suspicions fall on friends or colleagues. It is for this exact reason that reporting policies and training are so critical. Following the logic of *Hunter*, a school district does not need to train its teachers not to abuse or assault the students because the repugnant nature of such behavior is obvious. *See Hunter,* 2015 WL 7734158, at *4. However, a school district must train its employees to report suspicions of abuse to prevent the damage caused when teachers engage in the crime of sexually assaulting a student entrusted to their care.

Finally, as in this case, the choice not to report suspected sexual assault when a minor student is in fact being assaulted will frequently allow the constitutional violations to continue.

The Court thus concludes that plaintiff has adequately pled the elements of a § 1983 claim against the District on a failure to train theory of liability. His allegations are sufficient to state a causal nexus between the failure to train and the constitutional violation and the facts raise an inference of deliberate indifference.

## V. CONCLUSION

For the foregoing reasons, the District's Motion to Dismiss is denied. An appropriate order follows.